1  JACK S. SHOLKOFF, State Bar No. 145097
   jack.sholkoff@ogletreedeakins.com
2  BETH A. GUNN, State Bar No. 218889
   beth.gunn@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  633 West Fifth Street, 53rd Floor
   Los Angeles, California 90071
5  Telephone:  (213) 239-9800
   Facsimile:  (213) 239-9045
6
   Attorneys for Defendant
7  DARDEN RESTAURANTS, INC.

8

9           **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11  JESUS ALBERTO CACERES, an          Case No. CV08-06840 CAS (AGRx)
    individual; CYNTHIA STRAYER, an
12  individual; MELIDA NOVOA, an
    individual; LAURIE COX, an
13  individual; ALLISON CARROLL, an    **MEMORANDUM OF POINTS AND
    individual; ELIAH LEFFERTS, an     AUTHORITIES IN SUPPORT OF
14  individual; TONY DUNN, an          DEFENDANT'S MOTION TO
    individual; for themselves, and on behalf   DISMISS PURSUANT TO
15  of all others similarly situated,  FEDERAL RULE OF CIVIL
                                       PROCEDURE 12(b)(6) AND
16              Plaintiffs,            MOTION TO STRIKE PURSUANT
                                       TO FEDERAL RULE OF CIVIL
17       v.                           PROCEDURE 12(f)**

18  DARDEN RESTAURANTS, INC., a        Date:       November 17, 2008
    Florida corporation, doing business in   Time:       10:00 a.m.
19  California as RED LOBSTER, and     Courtroom:  5
    DOES 1 through 52, inclusive,
20                                     Date Filed:  September 12, 2008
                Defendants.
21

22

23  ///

24  ///

25  ///

26  ///

27  ///

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF FACTS.......................................................................3

III.   THE COURT SHOULD DISMISS NAMED PLAINTIFFS' SECOND CLAIM FOR RELIEF, AND ALL DERIVATIVE CLAIMS, BECAUSE NAMED PLAINTIFFS HAVE NOT PLEADED FACTS DEMONSTRATING THAT THEY HAVE A PLAUSIBLE BASIS FOR RELIEF. .........................................................................................8

    A.   To Survive A Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Named Plaintiffs Must Plead Facts Demonstrating That They Have A Plausible Basis For Relief. ...........8

    B.   Named Plaintiffs Have Not Pleaded Facts That Red Lobster Required Any Employees, Including Themselves, To Forego Meal And Rest Periods..........................................................................9

IV.    THE COURT SHOULD DISMISS OR STRIKE THE CLASS CLAIMS FROM THE SECOND CLAIM FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR 12(f) BECAUSE NO PLAUSIBLE BASIS FOR CLASS-WIDE RELIEF EXISTS................................................................................................15

    A.   Because Relevant Law Dictates That Claims Based On Meal And Rest Period Violations Require An Inherently Individualized Inquiry, The Second Claim For Relief Is Incapable Of Class-Wide Relief......................................................................................15

    B.   Because Named Plaintiffs' Derivative Claims For Waiting Time Penalties and Unfair Competition Based Upon The Meal And Rest Period Violations Are Dependent Upon The Same Inherently Individualized Inquiry, The Third and Fourth Claims For Relief Are Likewise Incapable Of Class Treatment....................20

    C.   The Class Allegations Regarding The Second Claim For Relief Are Irrelevant and Immaterial and Should Be Stricken From The Complaint Pursuant to FRCP 12(f). .......................................20

V.     NAMED PLAINTIFFS WHOSE ONLY CLAIMS DEPEND ON THE SECOND CLAIM FOR RELIEF SHOULD BE STRICKEN FROM THE COMPLAINT. ................................................................................21

VI.    CONCLUSION. ....................................................................................21

6754320_2.DOC

1

# **TABLE OF AUTHORITIES**

2

3     **CASES**                            **Page(s)**

4
5     Bell Atlantic Corp. v. Twombly,
         127 S.Ct. 1955 (2007).................................................................1, 8, 9, 15

6
7     Brinker Restaurant Corp. v. Superior Court,
         165 Cal.App.4th 25 (2008) ........................................................12

8
9     Brown v. County of Cook,
         2008 WL 902938 (N.D. Ill.) ....................................................16

10
11    Brown v. Federal Express Corp.,
         249 F.R.D. 580 (C.D. Cal., 2008)...................................11, 16, 17

12
      Cicairos v. Summit Logistics, Inc.,
13       133 Cal.App.4th 949 (2005) ....................................................13

14    Conley v. Gibson,
         355 U.S. 41 (1957)....................................................................8
15

16    Kamm v. California City Development Co.,
         509 F.2d 209-210 (9th Cir. 1975)............................................16

17
18    Kenny v. SuperCuts, Inc.,
         2008 WL 2265194 (N.D. Cal., June 2, 2008).....................16, 18, 19

19
20    Perez v. Safety-Kleen Systems, Inc.,
         2008 WL 2949268 (N.D. Cal., July 28, 2008) ........................12

21
22    White v. Starbucks Corp.,
         497 F.Supp.2d 1080 (N.D. Cal. 2007)...........................11, 12, 14, 20

23    Wilkerson v. Butler,
         229 F.R.D. 166 (E.D. Cal. 2005) .............................................21

24

25

26    **STATUTES**

27    Business & Professions Code, Chapter 4 and 5, *et seq.* .............................6

28    Business & Professions Code §§ 17000, *et seq.* ....................................6, 7

ii          CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

6754320_2.DOC

Business & Professions Code §§ 17200, *et seq.* ....................................................3, 7

California Code of Civil Procedure, § 382 .................................................................6

California Industrial Welfare Commission Wage Order No. 4 .................................8

Federal Rule of Civil Procedure 8(a)(2) ...................................................................8

Federal Rule of Civil Procedure 12(b)(6) ........................................................passim

Federal Rule of Civil Procedure 12(f) .............................................................passim

Federal Rule of Civil Procedure 23 .......................................................16, 17, 19

Federal Rule of Civil Procedure 23(a):(1) ...........................................................15

Labor Code § 203..........................................................................................3, 5, 7, 20

Labor Code § 226.7...............................................................................1, 11, 12, 16

Labor Code Section 1194 and Wage Order 5-2001................................................3, 7

CASE NO. CV08-06840 CAS (AGRx)

6754320_2.DOC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this action, Jesus Alberto Caceres, Cynthia Strayer, Melida Novoa, Laurie Cox, Allison Carroll, Eliah Lefferts, and Tony Dunn (collectively, "Named Plaintiffs") are former managerial employees who worked at Red Lobster[1] restaurants throughout California. The instant proceeding focuses upon their Second Claim for Relief, in which they seek class action relief based upon their assertion that all managers – including General Managers, Beverage and Hospitality Managers, and Culinary Managers, were not provided meal and rest periods as required by California law. Yet, as we explain, the Court should (1) issue an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing without leave to amend the Second Claim for Relief seeking premiums pursuant to Labor Code section 226.7 arising from Red Lobster's alleged failure to provide certain employees meal and rest periods; and (2) issue an Order pursuant to Federal Rule of Civil Procedure 12(f) striking the class action allegations brought by Named Plaintiffs that arise from or are derivative to the Second Claim for Relief that Red Lobster failed to provide certain employees with meal and rest periods.[2]

The Court should grant this relief for the following reasons:

<u>First</u>. The Named Plaintiffs' Second Claim for Relief fails to state a claim upon which relief can be granted because it does not satisfy the pleading requirements outlined recently in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007). In <u>Twombly</u>, the Supreme Court held that to survive a challenge by a 12(b)(6) motion, the complaint must provide facts indicating a plausible basis for

---

[1]     The Complaint names Darden Restaurants, Inc., doing business as Red Lobster, as the defendant in this matter. (Complaint, ¶ 1). For purposes of this Motion, all references in the Complaint to either Darden Restaurants, Inc. or Red Lobster will be referred to in this Motion as Red Lobster.

[2]     The First Claim for Relief, alleging that employees in the position of General Manager were not compensated for required travel and meeting time is not at issue in this proceeding.

6754320_2.DOC

1    relief.  The Complaint does not meet the <u>Twombly</u> test. The allegations contained in

2    the Complaint allege that the Named Plaintiffs – unbeknownst to Red Lobster –

3    falsified their time records in order to <u>mislead Red Lobster</u> into believing that the

4    breaks had been taken, <u>in blatant defiance of Red Lobster's policy</u>.  These allegations

5    foreclose any possibility of the Named Plaintiffs pursuing the meal and break period

6    claim at all.

7         <u>Second</u>.  Even if the Named Plaintiffs could state valid individual claims for

8    missed meal and rest periods, they cannot state class action claims.  The Named

9    Plaintiffs' allegations contained in the Complaint set forth evidentiary facts that

10   demonstrate that class certification is impossible on the Second Claim for Relief.

11   Specifically, according to recent federal authority, a class action may not be certified

12   for meal and rest period violations unless an employer has instituted a company-wide

13   policy that forces employees to forego their meal and rest periods.  Here, the

14   allegations clearly state that <u>Red Lobster did not have a policy forcing employees to</u>

15   <u>forego their meal and rest periods</u>; on the contrary, the allegations clearly state that

16   <u>Red Lobster had a policy requiring employees to clock in and out for their meal</u>

17   <u>breaks, and that employees would be disciplined for failure to clock in and out for</u>

18   <u>breaks as required</u>.  Thus, class-wide relief is not appropriate for the Second Claim

19   for Relief, nor is it viable for the aspects of the Third and Fourth Claims for Relief

20   that are based upon Red Lobster's alleged failure to provide meal and rest periods to

21   its managers.

22        Accordingly, Red Lobster respectfully requests that this Court dismiss the

23   Second Claim for Relief pursuant to Federal Rule of Civil Procedure 12(b)(6), and

24   dismiss and/or strike pursuant to Federal Rule of Civil Procedure 12(f) from the

25   complaint all class allegations regarding plaintiffs' Second Claim for Relief for

26   violation of California's meal and rest period laws.

27   ///

28

2    CASE NO. CV08-06840 CAS (AGRx)

## II.    STATEMENT OF FACTS

1.    On or about September 12, 2008, Named Plaintiffs, for themselves and on behalf of all others similarly situated, filed a Civil Complaint (the "Complaint") in the Superior Court of the State of California, County of Los Angeles, entitled Jesus Alberto Caceres, an individual; Cynthia Strayer, an individual; Melida Novoa, an individual; Laurie Cox, an individual; Allison Carroll, an individual; Eliah Lefferts, an individual; and Tony Dunn, an individual; for themselves, and on behalf of all others similarly situated, Plaintiffs, v. Darden Restaurants, Inc., a Florida corporation, doing business in California as Red Lobster, and Does 1 through 52, inclusive (hereinafter, "Complaint").[3]    Red Lobster timely removed the matter to Federal court on October 17, 2008.

2.    The Complaint alleges four claims for relief:  (1) Unpaid Minimum Wages (pursuant to Labor Code §1194 and Wage Order 5-2001); (2) Unpaid Meal and Break Periods (pursuant to Industrial Wage Order 5-2001 and California Labor Code §226.7); (3) Violation of Labor Code §203 (waiting time penalties); and (4) Unfair Business Practices, Business & Professions Code §§ 17200, *et seq.*

3.    Named Plaintiffs' Second Claim for Relief, seeking compensation for unpaid meal and rest break periods, is based on the following allegations contained in the Complaint:

a.    "As General Managers, CACERES and DUNN were the only employees not expected to clock in and out for breaks…in reality, due to the constant demands and pressure that is placed on the entire management staff at [Red Lobster], taking either a ten minute uninterrupted rest break for every four hours worked and/or a thirty minute uninterrupted meal break for every six hours each day hardly ever occurred." (Complaint, ¶ 21).

///

---

[3] A copy of the Complaint filed in this matter was attached to the Notice of Removal filed on October 17, 2008; however, for the Court's convenience, a copy of the Complaint filed with the Notice of Removal is attached hereto as Exhibit A.

b.      "COX, as the Beverage and Hospitality Manager, was required to clock in and out for her breaks, although in reality, she hardly ever took a proper uninterrupted rest or meal break.  Since it was corporate policy for managers to clock in and out for all breaks, and in reality breaks were hardly ever taken, COX, like all other managers (regardless of what specific management title they held with the exception of General Manager,) would at the end of the day edit her time card so that she would not be written up later for a 'break violation,' which often happened for managers.  It was regular custom and practice for all managers to edit their time cards to avoid being written up or to have to explain how busy the restaurant had been to the District Manager."  (Complaint, ¶ 23).

c.      "Plaintiffs CARROLL, NOVOA and LEFFERTS were all employed as Service Managers…As Service Managers, CARROLL, NOVOA and LEFFERTS were regularly scheduled to work at least ten hours a day, five to sometimes six days a week.  Pursuant to [Red Lobster]'s management policy, Service Managers were to work approximately nine and one half hours each work day and take a thirty minute meal break so that the daily hours worked would equal ten total hours.  In reality, based on how the restaurant was run and the staffing levels, the ability to take the thirty minute uninterrupted meal break (or a ten minute rest break) often proved impossible."  (Complaint, ¶ 24).

d.      "Just like Beverage and Hospitality Managers, Service Managers also were required to clock in and out for their breaks although the reality was those breaks were hardly ever taken."  (Complaint, ¶ 26).

e.      "Just like the other Managers (not General Managers), STRAYER as the Culinary Manager was required to clock in and out for her breaks, although in reality, she hardly ever took a proper uninterrupted rest or meal break.  Since it was corporate policy for managers to clock in and out for all breaks, and in reality breaks were hardly ever taken, STRAYER, like all other managers (regardless of what specific management title they held – except for General Managers), would

4

1   at the end of the day edit her time card so that she would not be written up later for a

2   'break violation," which often happened for managers.  It was regular custom and

3   practice for all managers to edit their time cards to avoid being written up or to have

4   to explain how busy the restaurant had been to the District Manager." (Complaint,

5   ¶ 28).

6          f.     "In order for any of the Managers identified in this action to take

7   a break, another manager had to be present to watch over the restaurant.  In reality, it

8   was infrequent that a second manager would be present to cover the shift of the

9   manager on break.  Moreover, when a manager was able to take a thirty minute meal

10  break, that break often took place in the bar area so that they could watch over the

11  restaurant and respond to anything that was needed in case of an emergency.

12  Collectively due to how [Red Lobster] operated its [Red Lobster] restaurants in

13  California, Plaintiffs rarely were ever given the opportunity to take either an

14  uninterrupted ten minute rest break or thirty minute meal break.  (Complaint, ¶ 29).

15     4.     Named Plaintiffs' Third Claim for Relief, seeking waiting time penalties

16  for the alleged violation of Labor Code Section 203, derives in part from Named

17  Plaintiffs' Second Claim for Relief alleging violation of California's meal and rest

18  break laws, as evidenced by the following allegations contained in the Complaint:

19          a.     "Plaintiffs and the Section 203 Sub-Class of employees whose

20  employment with [Red Lobster] has been terminated at any time since July 15, 2004

21  were, at all times, during their employment with [Red Lobster], entitled to wages for

22  all hours worked but unpaid, including, but not limited to, all missed meal and rest

23  breaks." (Complaint, ¶ 45).[4]

24          b.     "As a consequence of [Red Lobster]'s willful failure to pay the

25  Section 203 Sub-Class members for all hours worked but unpaid, including, but not

26  limited to all missed meal and rest breaks, the Section 203 Sub-Class members are

27  entitled to thirty days wages as penalty damages..." (Complaint, ¶ 47).

28  _____

[4]     All emphasis herein is added unless otherwise stated.

6754320_2.DOC

5.      Named Plaintiffs' Fourth Claim for Relief, seeking damages based on the alleged unfair business practices in violation of Business & Professions Code Sections 17000, *et seq.*, derives in part from Named Plaintiffs' Second Claim for Relief violation of California's meal and rest break laws, as evidenced by the following allegations contained in the Complaint:

a.      "The failure to compensate the Class Members for all time worked, including, but not limited to, compensation for missed <u>meal and rest breaks</u>, is an unfair business practice as defined by the Unfair Practices Act." (Complaint, ¶ 49).

b.      "Plaintiffs are informed and believe, and based thereon allege, that [Red Lobster] has intentionally and improperly required the Class Members to perform tasks, including, but not limited to working without proper <u>meal and rest breaks</u> for the period of July 2004 to the present." (Complaint, ¶ 53).

c.      "Plaintiffs are informed and believe, and based thereon allege, that by failing to provide compensation for all hours worked and proper <u>rest and meal breaks</u> for Class Members for the time period of July 2004 to the present was intentional."  (Complaint, ¶ 55).

d.      "Plaintiffs are informed and believe, and based thereon alleges [sic], that [Red Lobster] was able to compete unfairly with other chain type restaurants in the State of California by not properly providing its employees wages for all hours worked and <u>meal and rest breaks</u> in violation of Business & Professions Code, Chapter 4 and 5, *et seq.*  (Complaint, ¶ 57.c).

e.      "Plaintiffs are also entitled to an injunction prohibiting [Red Lobster] from requiring its employees to work without proper compensation and <u>rest and meal breaks</u>."  (Complaint, ¶ 63).

6.      Named Plaintiffs identify the class they are attempting to represent in the following allegations contained in the Complaint:

a.      "This action is brought pursuant to California *Code of Civil Procedure,* Section 382 on behalf of three classes.  Class A is composed of all

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

current and former [Red Lobster] employees who worked at [Red Lobster] as General Managers in California at any time from July 2004 through the present time.[5]  Class B is composed of all current and former [Red Lobster] employees who worked at [Red Lobster] as Beverage and Hospitality Managers in California at any time from July 2004 through the present time.  Class C is composed of all current and former [Red Lobster] employees who worked at [Red Lobster] as Service Managers in California at any time from July 2004 thorough the present time. (Classes A, B and C are collectively referred to as the 'Class.')"  (Complaint, ¶ 14).

b.     "Plaintiffs also challenge the business practices of [Red Lobster] and seek compensation on behalf of terminated and current employees of [Red Lobster] and the general public pursuant to California Business and Professions Code, Sections 17000, *et seq.* and 17200, *et seq.*"  (Complaint, ¶ 14).

c.     "This action is also brought by Plaintiffs on behalf of a Sub-Class of the Class, consisting of persons whose employment with [Red Lobster] whose employment at [Red Lobster] ended at any time since July 2004, for 30 days waiting time penalties pursuant to California Labor Code, Section 203 (the '203 Sub-Class')."  (Complaint, ¶ 15).

7.     Named Plaintiffs assert the following allegations regarding the elements necessary to bring a class action:

a.     "There is a well-defined community of interest in the questions of law and fact affecting the Plaintiff class in that the legal questions of violation of the California Labor Code, the California Business and Professions Code, Section

---

[5] Named Plaintiffs Caceres and Dunn, as General Managers, seek to bring the First Claim for Relief, for unpaid minimum wages pursuant to Labor Code Section 1194 and Wage Order 5-2001, on behalf of the "Minimum Wage Class Members," who are comprised of General Managers employed by Red Lobster who were allegedly not paid for required "travel during numerous times throughout the year to attend various training conferences, seminars, and other management meetings." (Complaint, ¶¶ 33-34).  Thus, the First Claim for Relief does not seek unpaid minimum wage compensation for Named Plaintiffs other than Caceres and Dunn, and does not seek unpaid minimum wage compensation for any putative class members who are not General Managers.

6754320_2.DOC

1   17000, *et seq.*, ('Unfair Practices Act'), and the California Industrial Welfare
2   Commission Wage Order No. 4, are common to the Class and Sub-Classes."
3   (Complaint, ¶ 16).

4          b.    "The questions of law and fact common to all members of the
5   Class and Sub-Classes predominate over any questions affecting only individual
6   members and a class action is superior to any other available method for the fair and
7   efficient way of this controversy." (Complaint, ¶ 17).

8   **III.   THE COURT SHOULD DISMISS NAMED PLAINTIFFS' SECOND
9   CLAIM FOR RELIEF, AND ALL DERIVATIVE CLAIMS, BECAUSE
10   NAMED PLAINTIFFS HAVE NOT PLEADED FACTS
    DEMONSTRATING THAT THEY HAVE A PLAUSIBLE BASIS FOR
    RELIEF.**

11        **A.   To Survive A Motion To Dismiss Pursuant to Federal Rule of Civil
12   Procedure 12(b)(6), Named Plaintiffs Must Plead Facts
    Demonstrating That They Have A Plausible Basis For Relief.**

13        The Supreme Court, in <u>Bell Atlantic Corp. v. Twombly</u>, ("<u>Twombly</u>") took a
14   "dramatic departure from settled procedural law" when it clarified the pleading
15   standards imposed by Federal Rule of Civil Procedure ("FRCP") 8. See <u>Twombly</u>,
16   127 S.Ct., at 1975 (Stevens, J., dissenting).[6]  The Court stated that in order for a
17   plaintiff to survive a challenge to a FRCP 12(b)(6) motion, a pleading must fulfill the
18   requirement of FRCP 8(a)(2) mandating "a short and plaint statement of the claim
19   showing that the pleader is entitled to relief."  Put another way, the Court held that
20   the Complaint must contain "enough facts to state a claim to relief that is <u>plausible</u>
21   <u>on its face</u>." <u>Id.</u> at 1965.  It is not enough that a plaintiff's claims for relief are
22   "conceivable" – if the allegations do not move "across the line from conceivable to
23   plausible, their complaint must be dismissed." <u>Id.</u>

24        <u>Twombly</u> was an antitrust action in which the plaintiff attempted to allege a
25   violation of section 1 of the Sherman Antitrust Act.  To prove such a violation,

26        [6] In its decision in <u>Twombly</u>, the Supreme Court expressly overruled the prior
27   rule of <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), which allowed complaints to survive
    FRCP 12(b)(6) motions "unless it appear[ed] beyond doubt that the plaintiff can
28   prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> at
    1968.

1  section 1 requires the existence of a conspiracy between the defendants.  In an effort

2  to make this showing, plaintiff alleged that defendants engaged in parallel conduct

3  and also cited certain actions by other parties. <u>Twombly</u>, 127 S.Ct. at 1962.  The

4  problem, however, was that the plaintiffs had not alleged specific conduct by the

5  defendants that showed that the key element required to pursue the claim – the

6  existence of an agreement among the defendants to engage in restraint of trade – was

7  present.  <u>Id.</u>, at 1971.  Absent these specific, necessary allegations, the Court held

8  that dismissal pursuant to FRCP 12(b)(6) was appropriate.

9      In making its decision, the Supreme Court explicitly authorized the dismissal

10  of groundless claims at the pleading stage.  The Court stated:

11          when the allegations in a complaint, however true, could not raise a

12          claim of entitlement to relief, this basic deficiency should … be

13          exposed at the point of minimum expenditure of time and money by the

14          parties and the court.

15  <u>Twombly</u> at 1966 (internal citations omitted).  Critically, the Court emphasized that,

16  "Some threshold of **plausibility** must be crossed at the outset before a …case should

17  be permitted to go into its inevitably costly and protracted discovery phase."  <u>Id.</u>

18  (citing <u>Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.</u>, 289 F.Spp.2d 986, 995

19  (N.D. Ill. 2003)).  As we show, the Second Claim for Relief contained in the

20  Complaint does not pass muster under <u>Twombly</u> and thus should be dismissed

21  without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6).

22  **B.   <u>Named Plaintiffs Have Not Pleaded Facts That Red Lobster</u>**
23  **<u>Required Any Employees, Including Themselves, To Forego Meal</u>**
     **<u>And Rest Periods.</u>**

24

25      The Complaint contains the following relevant allegations:

26  ◆ It was corporate policy for managers to clock in and out for all breaks.

27      (Complaint, ¶¶ 23, 26, 28).  This included Beverage and Hospitality Managers,

28  ///

9

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

6754320_2.DOC

1   Service Managers, and Culinary Managers, but not General Managers.

2   (Complaint, ¶¶ 21, 23, 24, 28).

3   ◆ Service Managers were scheduled to take a half-hour meal break each day.

4   (Complaint, ¶ 24).

5   ◆ Despite the corporate policy requiring managers to clock in and out for meal

6   breaks, Named Plaintiffs "hardly ever took a proper uninterrupted rest or meal

7   break," and "in reality breaks were hardly ever taken." (Complaint, ¶¶ 23, 26,

8   28).

9   ◆ The reason that meal and rest breaks "hardly ever occurred" was "due to the

10   constant demands and pressure that is placed on the entire management staff at

11   [Red Lobster]," and "based on how the restaurant was run and the staffing

12   levels, the ability to take [a meal break] often proved impossible."

13   (Complaint, ¶¶ 21, 24, 28).

14   ◆ Named Plaintiffs hid their violations of the corporate policy by falsifying their

15   time cards at the end of each day to indicate that a break had been taken in

16   compliance with California law when it had not been taken. (Complaint, ¶¶

17   23, 28).

18   ◆ Named Plaintiffs regularly <u>falsified their time cards</u> in this manner to avoid

19   being written up for a "break violation" or having to explain how busy the

20   restaurant had been to the District Manager. (Complaint, ¶¶ 23, 28).

21   Thus, for purposes of this proceeding, the following is accepted as true: (1) Red

22   Lobster had a corporate policy requiring managers to take breaks; (2) Red Lobster

23   had a disciplinary process in place to enforce the taking of meal breaks; employees

24   who did not take meal breaks would be written up for the violation; (3) individual

25   managers, based on the pressures of each managerial job, experienced difficulties in

26   taking breaks; (4) individual managers, based on the management and staffing of

27   each Red Lobster location, experienced difficulties in taking breaks; (5) individual

28   managers decided to falsify their time cards to reflect that breaks were taken when in

10

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

6754320_2.DOC

1   fact breaks were not taken; and (6) the reason individual managers elected to falsify

2   their time cards was to avoid being disciplined for failing to take breaks and to

3   prevent the District Manager from knowing how busy the store was.

4        These allegations doom the Second Claim for Relief in two material ways:

5   First, they fail to allege the existence of a specific corporate policy or practice that

6   forced employees to forego meal and rest breaks; this is a necessary allegation to

7   maintain an action.  In fact, the allegations demonstrate the opposite:  that a

8   corporate policy was in place to force employees to take breaks.  Second, the

9   allegations demonstrate that the Named Plaintiffs themselves made it impossible for

10  Red Lobster to provide meal breaks – or, significantly, premium pay as

11  compensation in lieu of meal breaks – due to the managers' practice of falsifying

12  time records to reflect that their breaks had been taken.  These allegations cannot

13  establish a plausible basis for the Second Claim for Relief because they are in direct

14  conflict with the type of conduct necessary to incur employer liability for missed

15  meal and rest breaks under California law, as detailed in Brown v. Federal Express

16  Corp., 249 F.R.D. 580 (C.D. Cal., 2008) ("Brown"), and White v. Starbucks Corp.,

17  497 F.Supp.2d 1080 (N.D. Cal. 2007) ("White").

18       As these courts have observed, the statutory language of Labor Code 226.7

19  states only that an employer is obligated "to provide an employee a meal period or

20  rest period."  Construing the term "provide" to mean "to supply or make available,"

21  these courts concluded that an employer's obligation pursuant to Labor Code 226.7

22  is to make meal and rest periods available to employees, not "to ensure that

23  employees take advantage of what is made available to them."  Brown, 249 F.R.D. at

24  585; White, 497 F.Supp.2d at 1086, 1088-1089.  As a result of these authorities, an

25  employer cannot be liable merely because, as Named Plaintiffs allege here "breaks

26  were hardly ever taken," or "hardly ever occurred." Instead, "the employee must

27  show that he was forced to forego his meal breaks as opposed to merely showing that

28

11

6754320_2.DOC

1  he did not take them regardless of the reason."[7]  <u>White</u>, 497 F.Supp.2d at 1088-1089

2  (emphasis in original).  Yet Named Plaintiffs do not include a single allegation

3  regarding how Red Lobster forced its employees to forego their meal periods.  To the

4  contrary, the facts the Named Plaintiffs do plead show the <u>opposite</u>:  The facts show

5  that <u>Red Lobster had a policy requiring managers to take meal breaks, that managers</u>

6  <u>were scheduled to take meal breaks</u>, and <u>that Red Lobster had a system for</u>

7  <u>monitoring meal breaks and enforcing the meal break policy by disciplining those</u>

8  <u>who violated it</u>.  These facts – <u>which are clear from the face of the Complaint</u> –

9  show that Red Lobster, to the extent possible, actually forced its employees to <u>take</u>

10  meal breaks.  <u>Thus, Named Plaintiffs' allegations preclude any plausible ground for</u>

11  <u>relief for meal and rest period violations</u>.

12      At most, Named Plaintiffs have pled that Red Lobster failed to make meal

13  breaks available to them because the nature of their respective jobs was very

14  demanding.  However, the fact that the management staff was subject to constant

15  demands and pressure is not enough, as a matter of law, to state a viable claim for

16  relief against an employer; rather, a claim is viable only if an employee alleges

17  specific facts indicating that there was a <u>specific employer policy or practice</u> of

18  discouraging breaks.  See <u>Perez v. Safety-Kleen Systems, Inc.</u>, 2008 WL 2949268,

19  *7 (N.D. Cal., July 28, 2008) ("There is no authority for the proposition that an

20  employer is liable for failing to provide meal breaks simply because an employee

21  chooses to forego a meal break in order to complete his or her work, absent evidence

22  of a specific employer policy or practice of discouraging breaks.").  Named Plaintiffs

23  have not alleged the existence of such a policy or practice here.  On the contrary,

24      [7] The California Appellate Court, in <u>Brinker Restaurant Corp. v. Superior</u>

25  <u>Court</u>, 165 Cal.App.4th 25, 49-58 (2008) (review granted, October 22, 2008),
adopted the same interpretation of Labor Code section 226.7 as the federal courts.

26  As the <u>White</u> court directs, in the continuing "absence of controlling California
Supreme Court precedent, the court is Erie-bound to apply the law as it believes that

27  court would do under the circumstances." <u>Id.</u> at 1088.  Using this guideline, the
<u>White</u> court further concluded that "the California Supreme Court, if faced with this

28  issue, would require only that an employer offer meal breaks, without forcing
employers actively to ensure that workers are taking these breaks." <u>Id.</u> at 1089.

6754320_2.DOC

1 | they have alleged facts <u>inconsistent</u> with the claim that Red Lobster had an improper
2 | policy or practice of discouraging breaks.  Instead, they have alleged that <u>Red</u>
3 | <u>Lobster had a proper meal and rest period policy in place</u>, and <u>enforced the policy in</u>
4 | <u>a serious manner designed to ensure that employees took their breaks</u>.

5 |      But the most persuasive allegations demonstrating that Red Lobster did not
6 | force Named Plaintiffs to forego their meal periods are the Named Plaintiffs'
7 | allegations concerning their falsification of time records to show that they had taken
8 | breaks when in fact they were not taken.  These allegations are significant because
9 | they conclusively show that, to the extent that breaks were not taken (and missed
10 | breaks were not properly compensated), such missed breaks resulted from the
11 | Named Plaintiffs' own practice to forego breaks and perpetrate time card fraud to
12 | deceive Red Lobster from knowledge of their choices.

13 |      In sum, there is no question that Named Plaintiffs admit that: (1) they
14 | intentionally misled Red Lobster into believing it was in compliance with
15 | California's meal break policy by falsifying their time records to show that their
16 | meal breaks had been taken; and (2) they did so for the purpose of hiding how busy
17 | the store was from the District Manager.  These allegations indicate that, by virtue of
18 | Named Plaintiffs' own actions, Red Lobster <u>could not have been aware</u> that
19 | employees were not taking their meal breaks as directed, and therefore cannot be
20 | liable for the missed meal breaks, and certainly cannot be liable for the failure to
21 | compensate Named Plaintiffs for the missed meal breaks as alleged in the Second
22 | Claim for Relief.

23 |      The reasoning set forth by the court in <u>White</u> distinguished its holding from
24 | the California Appellate Court's holding in <u>Cicairos v. Summit Logistics, Inc.</u>, 133
25 | Cal.App.4th 949 (2005), and provides excellent guidance on this point.  Addressing
26 | the narrowly-defined circumstances in which an employee may bring an action
27 | against an employer for failure to provide meal breaks, the court first acknowledged
28 | that liability for failure to provide meal periods relies on the <u>employers' knowledge</u>

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

1   of missed meal periods. In particular, the court noted that the action in <u>Cicairos</u> was
2   viable due to the fact that "the defendant in <u>Cicairos</u> <u>knew</u> that employees were
3   driving while eating and did not take steps to address the situation." 497 F.Supp.2d
4   at 1089. Following this line of reasoning, the court reasoned that:

> 5   an employer with no reason to suspect that employees were missing
> 6   breaks would have to find a way to force employees to take breaks or
> 7   would have to pay an additional hour of pay every time an employee
> 8   voluntarily chose to forego a break. This suggests a situation in which a
> 9   company punishes an employee who foregoes a break only to be
> 10   punished itself by having to pay the employee. In effect, employees
> 11   would be able to manipulate the process and manufacture claims by
> 12   skipping breaks or taking breaks of fewer than 30 minutes, entitling
> 13   them to compensation of one hour of pay for each violation. This
> 14   cannot have been the intent of the California Legislature, and the court
> 15   declines to find a rule that would create such perverse and incoherent
> 16   incentives.

17  <u>Id.</u>

18          The perverse and incoherent motives noted in <u>White</u> are certainly comparable
19  to the motives of the Named Plaintiffs in this matter. It is inconceivable to expect an
20  employer who has no reason to suspect that employees are missing breaks to be
21  liable for such missed breaks – especially where the employees have gone to great
22  lengths, including committing time card fraud, to deceive the employer into
23  believing that no missed breaks occurred. Moreover, by altering the time records to
24  reflect that no break violation occurred, the Named Plaintiffs prevented Red Lobster
25  from rectifying any alleged violation through payment of a premium pay penalty. As
26  the courts in <u>Brown</u> and <u>White</u> make clear, there is simply no viable claim for relief
27  under such circumstances because the Named Plaintiffs cannot cite any unlawful
28  policy or practice of Red Lobster. Thus, the Second Claim for Relief fails to state a

14

6754320_2.DOC

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

1 │ claim plausibly capable of relief, and it must be dismissed without leave to amend

2 │ pursuant to FRCP 12(b)(6).

3 │ **IV.  THE COURT SHOULD DISMISS OR STRIKE THE CLASS CLAIMS**
4 │ **FROM THE SECOND CLAIM FOR RELIEF PURSUANT TO**
  │ **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR 12(f)**
5 │ **BECAUSE NO PLAUSIBLE BASIS FOR CLASS-WIDE RELIEF**
  │ **EXISTS.**

6 │        Not only do Named Plaintiffs set forth a variety of allegations that

7 │ conclusively demonstrate that the allegations in their Second Claim for Relief fail to

8 │ state a claim upon which relief can be granted, but the Complaint also contains

9 │ allegations that make clear that the Named Plaintiffs' meal and rest period claims are

10 │ not capable of class-wide relief.  As the court in <u>Twombly</u> stated, "a plaintiff with a

11 │ largely groundless claim," should not "be allowed to take up the time of a number of

12 │ other people, with the right to do so representing an *in terrorem* increment of the

13 │ settlement value."  <u>Id.</u> at 1966 (citing <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544

14 │ U.S. 336, 347 (2005) (internal citations omitted)).  Thus, even if the Court does not

15 │ dismiss Named Plaintiffs' Second Claim for Relief pursuant to Federal Rule of Civil

16 │ Procedure 12(b)(6), it should, at a minimum, strike plaintiffs' class allegations

17 │ pursuant to Federal Rule of Civil Procedure 12(f).

18 │        **A.  Because Relevant Law Dictates That Claims Based On Meal And**
19 │ **Rest Period Violations Require An Inherently Individualized**
  │ **Inquiry, The Second Claim For Relief Is Incapable Of Class-Wide**
20 │ **Relief.**

21 │        The Named Plaintiffs' meal and rest period claims, as pled, are simply not

22 │ suitable for class treatment.  The Complaint seeks class-wide relief for claims based

23 │ on Red Lobster's alleged failure to provide Named Plaintiffs and others similarly

24 │ situated with meal and rest periods.  Yet, to be entitled to class-wide relief for these

25 │ claims, Named Plaintiffs must, at some point in the litigation, establish the elements

26 │ of a class action required under FRCP 23(a):  (1) numerosity, (2) common questions

27 │ of law or fact, (3) typicality, and (4) superiority of class-wide treatment of the claims

28 │ asserted.  While these questions are often left for determination at the class

6754320_2.DOC

1  certification stage of the proceedings, as <u>Twombly</u> clarifies, it is appropriate to
2  dismiss class allegations at the pleading stage if the claims asserted do not, and
3  cannot, satisfy the elements of FRCP 23.  <u>See also</u> <u>Kamm v. California City</u>
4  <u>Development Co.</u>, 509 F.2d 209-210 (9th Cir. 1975) (affirming dismissal of class
5  allegations where discovery would not assist in determining the propriety of the
6  proposed class claims); <u>accord</u> <u>Brown v. County of Cook</u>, 2008 WL 902938 (N.D.
7  Ill.) (granting motion to dismiss class allegations where "each putative class
8  member's situation would be different," and the proposed class was therefore
9  "uncertifiable").

10        As recent relevant case law demonstrates, a plaintiff cannot pursue a class
11 action based on violation of California Labor Code sections 226.7 by alleging that
12 employees "hardly ever" or "rarely" took meal breaks.  Rather, as the court in <u>Brown</u>
13 held, individual issues necessarily predominate in this type of claim for missed meal
14 and rest periods, thereby precluding class treatment of such claims.  In <u>Brown,</u> the
15 Central District of California held that, because the relevant legal inquiry asks <u>why</u>
16 employees did not take meal and rest breaks, liability cannot be determined without a
17 person-by-person and instance-by-instance examination of each missed break, which
18 is an inherently individualized inquiry precluding class certification.  The court
19 reasoned that "[b]ecause FedEx was required only to make meal breaks and rest
20 breaks available to Plaintiffs, Plaintiffs may prevail only if they demonstrate that
21 FedEx's policies deprived them of those breaks.  **Any such showing will require**
22 **substantial individualized fact finding**."  <u>Brown</u>, 249 F.R.D. at 586.  Further, the
23 court concluded that class treatment was not a superior means of adjudicating the
24 controversy because, "in order to prevail, each [class member] will have to
25 demonstrate the he or she was not able to take breaks required by California law,"
26 which would require a mini-trial of each class member, and cause an unnecessary
27 expenditure of resources and inevitable delay in adjudicating the matter.  <u>See Brown</u>,
28 249 F.R.D. at 587-588; <u>see also</u> <u>Kenny v. SuperCuts, Inc.</u>, 2008 WL 2265194 (N.D.

1 Cal., June 2, 2008) (detailing the need for an individual inquiry regarding plaintiff's
2 meal break claim, which defeats the commonality element required to certify a class
3 pursuant to FRCP 23).

4       Named Plaintiffs' asserted class allegations – as specifically pled here – are
5 untenable because they fall squarely within the ambit of <u>Brown</u>. In <u>Brown</u>, the
6 proposed class consisted of FedEx truck drivers, divided into different categories. The
7 court found that the different job duties of the drivers, combined with the different set
8 of circumstances at each location in California, the daily variations in the demands of
9 the job, and different managers' expectations, required a highly individualized inquiry
10 to determine whether meal or rest breaks were made available to the drivers. <u>Id.</u> at
11 586. Further, the court found that there was no method of common proof that would
12 establish that the employer's policies prevented drivers from taking required breaks,
13 regardless of their individual circumstances. <u>Id.</u> at 587. Similarly, here, the proposed
14 class consists of several categories of managers, with different job duties, who work at
15 different locations throughout California, reporting to different managers, who have
16 different ebbs and flows in their work. Like in <u>Brown</u>, there is simply no method of
17 common proof that would establish that Red Lobster's policies prevented the
18 managers from taking required breaks. There is no question that such claims are not
19 amenable to class-wide relief.

20       Most critically, the Named Plaintiffs' allegations – which specifically state that
21 they engaged in time card fraud – further illustrate why the Court could not certify
22 the meal and rest period claims for class-wide treatment in this action. To show that
23 Red Lobster is liable for the alleged missed meal and rest periods of the putative
24 class, not only must a court examine details regarding each instance in which such a
25 meal or rest period was missed, it must also examine the details surrounding the
26 missed break. This includes an investigation into the falsification of the time cards.
27 For instance, for each missed break, before liability can be assessed, there must be an
28 inquiry into whether the break was one in which the individual employee submitted

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

an inaccurate time card.  A host of other inherently individualized inquiries follow, including the extent to which each individual employee engaged in time card fraud, their individual reasons for doing so, whether other managers at the location were complicit, and how the different work environments at each location affected this decision.  Again, this is an inherently individualized inquiry.  Because the alleged falsification of time cards was perpetrated by employees, it follows that an assessment of liability will depend on the actions of each individual putative class member.

Further, it also logically follows that this practice, and any meal breaks missed that were not compensated as a result of this practice, cannot be attributed to the employer.  As the <u>Brown</u> court makes clear, employers can be liable on a class-wide scale <u>only</u> for meal and rest periods that were missed as a result of the employer's improper policy or practice.  Yet in this matter, Named Plaintiffs do not allege the existence of such a policy or practice.  Indeed, there is only one logical conclusion to be drawn from the allegations regarding the time card falsification:  that the practice responsible for the missed breaks was, at its core, an <u>employee</u> practice of the Named Plaintiffs, not an employer practice.  Therefore, Named Plaintiffs cannot establish this required element of its second claim for class-wide relief.  Accordingly, Named Plaintiffs fail – like the proposed class representatives in <u>Twombly</u> failed – to allege an element required to state a plausible ground upon which Red Lobster can be liable on a class-wide scale for the Second Claim for Relief.

Moreover, to the extent that Named Plaintiffs are alleging that, because the restaurants were busy, Red Lobster somehow failed to provide employees an adequate opportunity to take breaks, they also cannot establish a plausible ground of entitlement to class-wide relief on such allegations.  In fact, the court in <u>Kenny v. SuperCuts, Inc.</u> specifically addressed this theory of class-wide recovery and rejected it.  2008 WL 2265194, *6 (N.D. Cal., June 2, 2008) (slip copy).  The court stated outright that,

> Plaintiff's next theory – that the stores were too busy to give employees a meaningful opportunity to take breaks – requires an individual inquiry into each store, each shift, each employee. Perhaps the employee wanted to work through her meal break in order to earn more in tips or because she did not want to keep a valued customer waiting. On the other hand, the evidence might also show that in a particular case the store manager instructed an employee to help a customer rather than take a lunch break. Such an instruction could be viewed as the employer not "providing" a meal break; however, it is an individual question that cannot be resolved class wide.

Id. In this matter, the Complaint alleges that the reason that managers missed their breaks was "due to the constant demands and pressure that is placed on the entire management staff." (Complaint, ¶ 21). As the Kenny court illustrates, an allegation that a store is too busy for employees to take meal breaks requires that an individual inquiry be performed to ascertain whether an employee's own desire or management's desire motivated the missed break. As a result, the inquiry is inherently individualized, and class treatment is not appropriate, and cannot form the basis of a plausible entitlement to class-wide relief.

As the above cited cases consistently illustrate, the necessarily individualized inquiry involved in determining liability for the type of meal and rest period claims alleged in the Complaint defeats the commonality and superiority requirements of FRCP 23. As a result, Named Plaintiffs simply cannot, as a matter of law, state a plausible claim entitling them to class-wide relief. To expend any resources – including the resources of this Court – to pursue claims that are not capable of the relief sought would be wasteful. It follows that the class allegations regarding meal and rest breaks must be dismissed without leave to amend.

///

///

CASE NO. CV08-06840 CAS (AGRx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

6754320_2.DOC

**B.** **Because Named Plaintiffs' Derivative Claims For Waiting Time Penalties and Unfair Competition Based Upon The Meal And Rest Period Violations Are Dependent Upon The Same Inherently Individualized Inquiry, The Third and Fourth Claims For Relief Are Likewise Incapable Of Class Treatment.**

The allegations regarding the Third Claim for Relief alleging violation of Labor Code § 203 (requiring all wages to be paid at the time of termination) and the Fourth Claim for Relief for unfair competition are predicated upon the allegations contained in the Second Claim for Relief. In fact, the Complaint specifies that these claims are based, at least in part, upon Red Lobster's alleged failure to provide meal and rest periods. Because class treatment is inappropriate for the Second Claim for Relief as a matter of law, it is also necessarily inappropriate for the derivative claims contained in the Third and Fourth Claims for Relief. See, e.g., White, 497 F.Supp.2d at 1089-1090 (dismissing plaintiff's wage claim and unfair competition claim, which derived from the employer's alleged failure to provide meal breaks, after dismissing the meal break claim, on the grounds that the claims were derivative of the meal break claim). Because the claims are interdependent, the individualized inquiry necessary in the Second Claim for Relief is likewise necessary in the Third and Fourth Claims for Relief, and thus these claims also are incapable of class treatment. Accordingly, the class allegations in plaintiff's Third and Fourth Claims for Relief, to the extent that they refer to the Second Claim for Relief alleging failure to provide meal and rest periods, also should be dismissed without leave to amend.

**C.** **The Class Allegations Regarding The Second Claim For Relief Are Irrelevant and Immaterial and Should Be Stricken From The Complaint Pursuant to FRCP 12(f).**

Pursuant to FRCP 12(f), a court may "order stricken from any pleading any… immaterial, impertinent, or scandalous matter." As explained above, because Named Plaintiffs have alleged facts that render class relief for the Second Claim for Relief impossible, their class allegations regarding the Second Claim for Relief are irrelevant and immaterial. As such, they should be stricken from the Complaint pursuant to FRCP 12(f). In addition, a "motion to strike is appropriate to address

1   requested relief…which is not recoverable as a matter of law." <u>Wilkerson v. Butler</u>,

2   229 F.R.D. 166, 172 (E.D. Cal. 2005).   Because Named Plaintiffs assert claims for

3   class relief that are not appropriate for class treatment as a matter of law, the class

4   relief sought is not recoverable.  Therefore, each and every allegation referring to

5   class-wide relief contained in the Complaint's Second Claim for Relief, as well as

6   the derivative allegations contained in the Third and Fourth Claims for Relief, must

7   be stricken from the Complaint pursuant to FRCP 12(f).[8]

8   **V.   NAMED PLAINTIFFS WHOSE ONLY CLAIMS DEPEND ON THE**
    **SECOND CLAIM FOR RELIEF SHOULD BE STRICKEN FROM THE**
9   **COMPLAINT.**

10      In the event that the Court dismisses the Second Claim for Relief in its

11  entirety, as this Motion requests, Named Plaintiffs Cynthia Strayer, Melida Novoa,

12  Laurie Cox, Allison Carroll, and Eliah Lefferts will no longer be relevant, as they are

13  seeking relief only as members of Class B and Class C, as defined by the Complaint.

14  Putative members of the subclasses Class B and Class C are individuals who seek

15  relief for missed meal and rest periods as well as waiting time penalties and unfair

16  competition claims derived from the missed meal and rest period claims.  If the

17  Second Claim for Relief is dismissed, the names of these individuals, as well as the

18  classes they seek to represent, will be rendered irrelevant and immaterial.  As such,

19  their names should be stricken from the Complaint pursuant to FRCP 12(f).

20  **VI.   CONCLUSION.**

21      For all the foregoing reasons, Red Lobster respectfully requests that the Court

22  grant this motion, and issue an Order (1) dismissing without leave to amend Named

23  Plaintiffs' Second Claim for Relief, and Named Plaintiffs Cynthia Strayer, Melida

24  Novoa, Laurie Cox, Allison Carroll, and Eliah Lefferts; or alternatively, (2)

25  dismissing without leave to amend and/or striking the class allegations pertaining to

26  Named Plaintiffs' Second Claim for Relief, including the derivative class allegations

27  ──────────────
    [8] For the Court's convenience, Defendant has attached a table containing the
28  text it seeks to have stricken from the Complaint pursuant to FRCP 12(f).  <u>See</u> the
    accompanying Declaration of Beth A. Gunn, Ex. B.

1  in the Third and Fourth Claims for Relief.

2

3                                              Respectfully submitted,

4  DATED:  October 22, 2008                    OGLETREE, DEAKINS, NASH, SMOAK

5                                              & STEWART, P.C.

6

7                                              By: _____

8                                                    Beth A. Gunn
                                               Attorneys for Defendant
9                                              DARDEN RESTAURANTS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                            CASE NO. CV08-06840 CAS (AGRx)

6754320_2.DOC   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
                PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FRCP 12(f)

# EXHIBIT A

07/24/2008  12:28  1805560005   LAUREN JOHN UDDEN   PAGE  08/23

THE LAW OFFICE OF
GARRY M. TETALMAN
Garry M. Tetalman (#204189)
15 W. Carrillo Street, Suite 218
Santa Barbara, CA 93101
Telephone: (805) 879-7518
Facsimile: (805) 456-0561

THE LAW OFFICE OF
LAUREN J. UDDEN
Lauren J. Udden (#083118)
15 W. Carrillo Street, Suite 209
Santa Barbara, CA 93101
Telephone: (805) 879-7544
Facsimile: (805) 560-0506

Attorneys for Plaintiffs

FILED
LOS ANGELES SUPERIOR COURT

JUL 2 4 2008

JOHN A. CLARKE, CLERK
BY D.M. SWAIN, DEPUTY

## SUPERIOR COURT IN THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

JESUS ALBERTO CACERES, an
individual; CYNTHIA STRAYER, an
individual; MELIDA NOVOA, an
individual; LAURIE COX, an
individual; ALLISON CARROLL, an
individual; ELIAH LEFFERTS, an
individual; TONY DUNN, an
individual; for themselves, and on
behalf of all others similarly situated,

Plaintiffs,

vs.

DARDEN RESTAURANTS, INC., a
Florida corporation, doing business in
California as RED LOBSTER, and
DOES 1 through 52,
inclusive,

Defendants.

Case No.        BC395043

CLASS ACTION

COMPLAINT FOR:

1.   Unpaid Minimum Wages (pursuant
     to Labor Code §1194 and Wage
     Order 5-2001);

2.   Unpaid Meal and Break Periods
     (pursuant to Industrial Wage Order
     5-2001 and California *Labor Code*
     §226.7);

3.   Violation of Labor Code §203 (§203
     Subclass), and

4.   Unfair Business Practices, Business
     & Professions Code §§17000, *et seq.*

///
///
///

COMPLAINT - CLASS ACTION

1   Plaintiffs JESUS ALBERTO CACERES, TONY DUNN, CYNTHIA STRAYER, MELIDA
2   NOVOA, LAURIE COX, ELIAH LEFFERTS and ALLISON CARROLL, for themselves, and on
3   behalf of all others similarly situated ("Plaintiffs"), allege as follows:
4                                    **GENERAL ALLEGATIONS**
5        1.    At all times herein mentioned, Defendant DARDEN RESTAURANTS, INC.,
6   ("Defendant" or "DRI"), was, and is, a Florida corporation duly authorized to do, and doing,
7   business in the State of California as RED LOBSTER RESTAURANTS ("RL") with employees
8   performing services throughout the State of California, including the County of Los Angeles. DRI
9   is the parent company and/or owner of RL, a seafood chain restaurant specializing in serving fresh
10  seafood with over 40 locations throughout the State of California, including Los Angeles County.
11  Plaintiffs believe and based thereon allege that DRI employs currently at its RL California-based
12  locations, approximately at least 50 individuals working under the job titles of General Manager,
13  at least 100 individuals working under the title Service Manager, at least 100 individuals working
14  under the title Beverage and Hospitality Manager, and at least 100 individuals working under the
15  title Culinary Manager who were not given an uninterrupted thirty (30) minute meal break for every
16  six hours worked and an uninterrupted ten (10) minute rest break for every four hours worked in
17  accordance with California laws and regulations. Plaintiffs believe and based thereon, allege that
18  the Class includes over 500 current and former employees employed by DRI at its RL restaurants
19  as either a General Manager, Service Manager or Beverage and Hospitality Manager who did not
20  receive their proper rest and meal breaks in accordance with California law regulations. Moreover,
21  General Managers were required to travel on numerous occasions throughout the year to attend
22  management meetings throughout the United States and were required to travel on their "days off"
23  and were not compensated for either travel to and from these meetings nor attending these meetings.
24       2.    At all times herein mentioned, Plaintiff JESUS ALBERTO CACERES
25  ("CACERES") was and is a resident of the City of Oxnard, State of California. Plaintiff was
26  employed by DRI from August 1993 to April 2008, spending the last seven years of his employment
27  at the DRI's RL location in Oxnard, California. From 2004, until his termination in April 2008,
28  CACERES was the General Manager of the Oxnard RL.

                                            2

                                        **COMPLAINT - CLASS ACTION**

3.    At all times herein mentioned, Plaintiff TONY DUNN ("DUNN") was and is a resident of the City of Camarillo, State of California. Plaintiff was employed by DRI from October 11, 2002 to April 9, 2008, spending the majority of his time at DRI's RL location in Canoga Park, California. At the time of DUNN's termination, he was the General Manager of the Canoga Park, California RL location.

4.    At all times herein mentioned, Plaintiff LAURIE SUE COX ("COX") was and is a resident of Port Hueneme, State of California.  Plaintiff was employed by DRI from February 5, 2007 to April 6, 2008, spending her first thirteen weeks of employment at DRI's RL location in Salinas, California before being transferred to DRI's RL location in Oxnard, California. During COX'S employment tenure at the RL location in Oxnard, California, she was the Beverage and Hospitality Manager.

5.    Plaintiff CYNTHIA STRAYER ("STRAYER") is currently a resident of Phoenix, State of Arizona.  At all times relevant mentioned here, STRAYER was a resident of Port Hueneme, State of California.  Since September 1981, STRAYER had been employed with DRI in various RL locations throughout Arizona and California.  In June 2006, STRAYER transferred to the RL located in Oxnard, State of California. During STRAYER'S employment with RL in Oxnard, California, she was a Culinary Manager.

6.    At all times herein mentioned, Plaintiff ALLISON CARROLL ("CARROLL") was and is a resident of Ventura, State of California. Plaintiff was employed by DRI from August 2, 2004 to April 6, 2008, spending her entire employment tenure at DRI's RL location in Oxnard, California. At the time of her termination, CARROLL was a Service Manager.

7.    At all times herein mentioned, Plaintiff MELIDA NOVOA ("NOVOA") was and is a resident of Port Hueneme, State of California. Plaintiff was by DRI from March 6, 2007 to April 7, 2008, spending her entire career at DRI's RL location in Oxnard, California as a Service Manager.

8.    At all times herein mentioned, Plaintiff ELIAH LEFFERTS ("LEFFERTS") was and is a resident of Santa Paula, State of California. Plaintiff was employed by DRI from May 22, 2006 to April 6, 2008, spending his tenure at DRI's RL location in Canoga Park, California. At the time

3

**COMPLAINT - CLASS ACTION**

1  of his termination, Plaintiff was a Service Manager.

2      9.   Collectively, CACERES, DUNN, COX, STRAYER, CARROLL, NOVOA, and

3  LEFFERTS are hereinafter referred to as Plaintiffs.

4      10.   The true names and capacities, whether individual, corporate, associate, or otherwise,

5  of defendants sued herein as DOES 1 through 52, inclusive, are currently unknown to Plaintiffs,

6  who therefore sues defendants by such fictitious names.  Plaintiffs are informed and believe, and

7  based thereon allege, that each of the defendants designated herein as a DOE is legally responsible

8  in some manner for the events and happenings referred to herein and caused injury and damage

9  proximately thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of Court to amend

10  this Complaint to reflect the true names and capacities of the defendants designated hereinafter as

11  DOES when the same have been fully ascertained.

12      11.   Whenever in the Complaint reference is made to "defendants, and each of them"

13  such allegations shall be deemed to mean the acts of defendants acting individually, jointly, and/or

14  severally.

15      12.   Plaintiffs are informed and believe, and based thereon allege, that at all times

16  mentioned herein, each of the defendants was the agent, servant, employee, co-venturer, and co-

17  conspirator of each of the remaining defendants, and was at all times herein mentioned, acting

18  within the course, scope, purpose, consent, knowledge, ratification, and authorization for such

19  agency, employment, joint venture and conspiracy.

20      13.   This action is also brought by the Class for unpaid minimum wage compensation

21  pursuant to California Labor Code Section 1194 and Wage Order No. 5.

22      14.   This action is brought pursuant to California *Code of Civil Procedure*, Section 382

23  on behalf of three classes.  Class A is composed of all current and former DRI employees who

24  worked at RL as General Managers in California at any time from July 2004 through the present

25  time.  Class B is composed of all current and former DRI employees who worked at RL as Beverage

26  and Hospitality Managers in California at any time from July 2004 through the present time.  Class

27  C is composed of all current and former DRI employees who worked at RL as Service Managers

28  in California at any time from July 2004 through the present time.  (Classes A, B and C are

4

COMPLAINT - CLASS ACTION

Exhibit ___A___, Page___26___

1   collectively referred to as the "Class.") Plaintiffs also challenge the business practices of DRI and

2   seek compensation on behalf of terminated and current employees of DRI and the general public

3   pursuant to California Business and Professions Code, Sections 17000, *et seq.* and 17200, *et seq.*

4       15.     This action is also brought by Plaintiffs on behalf of a Sub-Class of the Class,

5   consisting of persons whose employment with DRI whose employment at RL ended at any time

6   since July 2004, for 30 days waiting time penalties pursuant to California Labor Code, Section 203

7   (the "203 Sub-Class").

8       16.     The members of the Class and Sub-Classes are so numerous that the joinder of all

9   members would be impractical and the disposition of their claims in a class action rather than in

10  individual actions will benefit the parties and the Court. The individual damages suffered by Class

11  Members are relatively small in comparison so that individual actions or individual remedies are

12  impracticable.  There is a well-defined community of interest in the questions of law and fact

13  affecting the Plaintiff class in that the legal questions of violation of the California Labor Code, the

14  California Business  and Professions Code, Section 17000, *et seq.*, ("Unfair Practices Act"), and

15  the California Industrial Welfare Commission Wage Order No. 4, are common to the Class and

16  Sub-Classes.

17      17.     The questions of law and fact common to all members of the Class and Sub-Classes

18  predominate over any questions affecting only individual members and a class action is superior

19  to any other available method for the fair and efficient way of this controversy.

20      18.     A representative action pursuant to California Business and Professions Code,

21  Section 17000, *et seq.*, on behalf of the general public is appropriate and necessary because the trade

22  practices of DRI as alleged herein violated California law.  Plaintiffs also request pursuant to the

23  Unfair Practices Act that this Court exercise its ancillary jurisdiction over the sums unlawfully

24  retained by DRI as a result of the conduct alleged herein and order disgorgement of unpaid residuals

25  to all affected class members.

26                          **STATEMENT OF FACTS**

27      19.     Allegations and other factual contentions stated "on information and belief" are

28  likely to have evidentiary support after Plaintiffs are afforded a reasonable opportunity for further

5

**COMPLAINT - CLASS ACTION**

07/24/2008  12:28  180556805       LAUREN JOHN UDDEN          PAGE  13/23

1    investigation and discovery.

2         20.    Plaintiffs CACERES and DUNN were employed as General Managers working at

3    DRI'S RL stores in California location in Oxnard and Canoga Park, respectively. Although they

4    worked at different restaurant locations, their job duties, hours worked and responsibilities were

5    strikingly similar. As General Managers, CACERES and DUNN were regularly scheduled to work

6    at least ten hours a day, often six days a week.  On certain occasions, Plaintiffs CACERES and

7    DUNN worked as much as 15 hours per day, and this does not include the time spent working from

8    home.  Although CACERES and DUNN worked in different  locations, their duties as General

9    Managers were very similar.  These duties included maintaining the appearance of the restaurant,

10   setting sales goals in training restaurant staff so that those goals could be met, tracking inventory

11   and anticipated need for inventory so that the restaurant was fully stocked and supplies were ordered

12   in a timely fashion, conferred with suppliers and making sure restaurant promotions were accurately

13   followed and ensuring that company recipes were followed for all food items served to customers.

14   Moreover, CACERES and DUNN were also responsible for hiring, interviewing, reviewing sales

15   reports, guest counts, labor costs, and reviewing training programs to receive new information and

16   to increase their level of performance in all areas. Besides these managerial duties, CACERES and

17   DUNN were also responsible for ensuring good customer service which often meant that they spent

18   a good deal of time waiting on tables, cooking and/or cleaning.  Further, CACERES and DUNN

19   were required to attend numerous conferences, regional meetings and seminars throughout the

20   United States and were not compensated for their time.  Specifically, CACERES and DUNN are

21   informed and believe, and based thereon allege, that RL would insist that travel time to and from

22   these meetings be done on the General Manager's "day off" and therefore would not compensate

23   CACERES, DUNN and the rest of the Class for their travel time. Moreover, once at the meetings,

24   the General Managers were still not compensated for this time.

25        21.    As General Managers, CACERES and DUNN were the only employees not

26   expected to clock in and out for breaks, which was a change in RL policy that occurred after a

27   previous lawsuit for missed meal and rest breaks was settled in California in 2003.  Although

28   CACERES and DUNN were not expected to clock out for these breaks, in reality, due to the

6

Exhibit ___A___, Page ___28___

1   constant demands and pressure that is placed on the entire management staff at RL, taking either

2   a ten minute uninterrupted rest break for every four hours worked and/or a thirty minute

3   uninterrupted meal break for every six hours each day hardly ever occurred.

4         22.     Plaintiff COX was employed as a Beverage and Hospitality Manager at DRI'S RL

5   location in Oxnard, California. As the Beverage and Hospitality Manager, COX was required to

6   work at least fifty (50) hours each week. Her primary duties as a Beverage and Hospitality Manager

7   included managing the bar and host staff, ensure proper inventory and supply in the bar, check all

8   daily reports on sales, and train staff to follow proper RL beverage recipes. Moreover, just like the

9   General Managers, COX was responsible for making sure that all customers were treated properly.

10  This included seating customers, waiting on tables, delivering orders, and cleaning.

11        23.     COX, as the Beverage and Hospitality Manager, was required to clock in and out for

12  her breaks, although in reality, she hardly ever took a proper uninterrupted rest or meal break. Since

13  it was corporate policy for managers to clock in and out for all breaks, and in reality breaks were

14  hardly ever taken, COX, like all other managers (regardless of what specific management title they

15  held with the exception of General Manager,) would at the end of the day edit her time card so that

16  she would not be written up later for a "break violation," which often happened for managers. It

17  was regular custom and practice for all managers to edit their time cards to avoid being written up

18  or to have to explain how busy the restaurant had been to the District Manager.

19        24.     Plaintiffs CARROLL, NOVOA and LEFFERTS were all employed as Service

20  Managers working at DRI'S RL stores in California location in Oxnard and Canoga Park,

21  respectively. Just like all of the other Managers, although they worked at different restaurant

22  locations, their job duties, hours worked and responsibilities were strikingly similar. As Service

23  Managers, CARROLL, NOVOA and LEFFERTS were regularly scheduled to work at least ten

24  hours a day, five to sometimes six days a week. Pursuant to RL's management policy, Service

25  Managers were to work approximately nine and one half hours each work day and take a thirty

26  minute meal break so that the daily hours worked would equal ten total hours. In reality, based on

27  how the restaurant was run and the staffing levels, the ability to take the thirty minute uninterrupted

28  meal break (or a ten minute rest break) often proved impossible.

7

COMPLAINT - CLASS ACTION

1    25.    As a Service Manager, regardless of what restaurant location they worked in, their

2    duties were very similar. These duties included the interviewing and hiring of bussers and servers,

3    working the dining room to ensure that all customers were happy with the level of service they were

4    receiving, preparing employee performance reviews, disciplining employees for not following

5    corporate policy when necessary, ensuring that the restaurant was clean and sanitized in all areas,

6    checking the quality of food and ensure that proper food handling safety precautions were followed,

7    and balancing the safe and preparing daily deposits. Besides the regular managerial duties, Service

8    Managers were also expected to seat, wait on and serve guests, clear tables and clean the restaurant,

9    kitchen and bar areas, cook and/or prepare food or beverages, and even wash dishes.

10    26.    Just like Beverage and Hospitality Managers, Service Managers also were required

11    to clock in and out for their breaks although the reality was those breaks were hardly ever taken.

12    27.    Plaintiff STRAYER was employed as a Culinary Manager at DRI'S RL location in

13    Oxnard, California. As the Culinary Manager, STRAYER was required to work at least fifty (50)

14    hours each week. Her primary duties as a Culinary Manager included managing the kitchen staff,

15    ensure proper inventory and supply in the kitchen, check all daily reports on sales, and train staff

16    to follow proper RL food recipes.  Moreover, just like all of the other Managers, STRAYER was

17    responsible for making sure that all customers were treated properly.  This included seating

18    customers, waiting on tables, delivering orders, cooking and cleaning.

19    28.    Just like the other Managers (not General Managers), STRAYER as the Culinary

20    Manager was required to clock in and out for her breaks, although in reality, she hardly ever took

21    a proper uninterrupted rest or meal break.  Since it was corporate policy for managers to clock in

22    and out for all breaks, and in reality breaks were hardly ever taken, STRAYER, like all other

23    managers (regardless of what specific management title they held - except for General Managers),

24    would at the end of the day edit her time card so that she would not be written up later for a "break

25    violation," which often happened for managers. It was regular custom and practice for all managers

26    to edit their time cards to avoid being written up or to have to explain how busy the restaurant had

27    been to the District Manager.

28    29.    In order for any of the Managers identified in this action to take a break, another

8

1  manager had to be present to watch over the restaurant.  In reality, it was infrequent that a second

2  manager would be present to cover the shift of the manager on break.  Moreover, when a manager

3  was able to take a thirty minute meal break, that break often took place in the bar area so that they

4  could watch over the restaurant and respond to anything that was needed in case of an emergency.

5  Collectively due to how DRI'S operated its RL restaurants in California, Plaintiffs rarely were ever

6  given the opportunity to take either an uninterrupted ten minute rest break or thirty minute meal

7  break.

## FIRST CLAIM OF RELIEF

### (Unpaid Minimum Wages Pursuant to Labor Code Section 1194

### and Wage Order 5-2001)

11       30.     Plaintiffs realleges and incorporates herein by reference each and every allegation

12  contained in Paragraphs 1 through 29, inclusive, of this Complaint as though fully set forth herein.

13       31.     This action is brought pursuant to California Labor Code Section 1194 which

14  provides for an employee to recover in a civil action the unpaid balance of the full amount of

15  minimum wage compensation due, including interest thereon, attorneys' fees and costs.

16       32.     This action is also brought pursuant to Section 4 ("Minimum Wages") of the Wage

17  Order 5-2001.  Subpart B of Section 4 specifically states, "Every employer shall pay to each

18  employee, on the established payday for the period involved, not less than the applicable minimum

19  wage for all hours worked in the payroll period, whether the remuneration is measured by time,

20  piece, commission, or otherwise."

21       33.     Plaintiffs CACERES and DUNN and other members of the Class (collectively the

22  "Minimum Wage Class Members") are or were employees of Defendants in the State of California

23  and Defendants were and are an employer employing persons in the State of California.  As such,

24  the Class Members were the type of persons contemplated to be protected by the Labor Code and

25  Wage Orders and said regulations were intended to apply to Defendants and to prevent the type of

26  injury and damage herein.

27       34.     Class Members were required to travel during numerous times throughout the year

28  to attend various training conferences, seminars, and other management meetings wherein they were

9

COMPLAINT - CLASS ACTION

Exhibit ___A___, Page___31___

1   required to attend these events and travel to and from them on their off time, meaning Defendant
2   did not compensate them for attending these events.

3       35.   Labor Code Section 1194.2 states, "In any action under Section 1193.6 or Section
4   1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an
5   order of the commission, an employee shall be entitled to recover liquidated damages in an amount
6   equal to the wages unlawfully unpaid and interest thereon."

7       36.   The failure of DRI to pay the Minimum Wage Class Members minimum wage for
8   all hours worked violates both the Labor Code and the Wage Orders.  Consequently, the Minimum
9   Wage Class Members were not paid in compliance with California law.  As a direct and proximate
10  result of DRI's conduct as herein above alleged, Plaintiffs CACERES, DUNN and Class Members
11  have sustained and will continue to sustain damages in an amount in excess of Five Million Dollars
12  ($5,000,000.00) of unpaid minimum wage premiums, together with interest thereon and attorney
13  fees and costs of the suit.

14  <u>**SECOND CLAIM OF RELIEF**</u>

15  <u>**(Unpaid Meal and Break Periods pursuant to Wage Order 5-2001**</u>
16  <u>**and California *Labor Code* §226.7)**</u>

17      37.   Plaintiffs reallege and incorporate herein by reference each and every allegation
18  contained in Paragraphs 1 through 29, and 31 through 36, inclusive, of this Complaint as though
19  fully set forth herein.

20      38.   Section 11 of Wage Order 5-2001, specifically reads:
21          "Meal Periods.
22          A.   No employer shall employ any person for a work period of
23          more than five (5) hours without a meal period of not less than 30
24          minutes, except that when a work period of not more than six (6)
25          hours will complete the day's work the meal period may be waived
26          by mutual consent of the employer and employee.  Unless the
27          employee is relieved of all duty during a 30 minute meal period, the
28          meal period shall be considered an "on duty" meal period and

10

COMPLAINT - CLASS ACTION

Exhibit _____A_____, Page_____32_____

counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee of being relieved of all duty and when by written agreement between the parties and on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

B.    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

C.    In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated."

39.   Section 12 of Wage Order 5-2001 specifically states:

"Rest Periods.

A.    Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

B.    If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular

11

1    rate of compensation for each workday that the rest period is not
2    provided."
3    40.    California *Labor Code* Section 226.7 states:
4      A.    No employer shall require any employee to work during any
5        meal or rest period mandated by an applicable order of the
6        Industrial Welfare Commission.
7      B.    If an employer fails to provide an employee a meal period or
8        rest period in accordance with an applicable order of the
9        Industrial Welfare Commission, the employer shall pay the
10       employee one additional hour of pay at the employee's
11       regular rate of compensation for each work day that the meal
12       or rest period is not provided.
13    41.    Plaintiffs and the other Class Members, are or were employees of DRI who worked
14 in the State of California at DRI'S RL restaurants and DRI was and is an employer employing
15 persons in the State of California. As such, the Class Members were the type of persons
16 contemplated to be protected by Wage Orders and *Labor Code* and said law and regulations were
17 intended to apply to DRI and to prevent the type of injury and damage herein.
18    42.    Plaintiffs and other Class Members were frequently prohibited from taking their ten
19 minute uninterrupted rest breaks for every four hours worked as well as their uninterrupted 30
20 minute meal breaks. Often the work required by DRI prohibited Plaintiffs and the other Class
21 Members from taking breaks through a 12 hour work day.
22    43.    The failure of DRI to allow the Class Members the opportunities to take the required
23 rest periods and meal breaks violates the Wage Orders and *Labor Code*. Consequently, DRI was
24 not in compliance with California law. As a direct and proximate result of DRI'S conduct as
25 herein above alleged, Plaintiffs and Class Members have sustained and will continue to sustain
26 damages in an amount in excess of Seven Million Dollars ($7,000,000.00) of unpaid premiums,
27 together with interest thereon and attorney fees and costs of the suit.
28 ///

12

COMPLAINT - CLASS ACTION

Exhibit ___A___, Page __34__

1

## THIRD CLAIM OF RELIEF

2

## (Violation of Labor Code §203 (§203 Subclass))

3        44.    Plaintiffs reallege and incorporate herein by reference each and every allegation

4  contained in Paragraphs 1 through 29, 31 through 36, and 38 through 43, inclusive, of this

5  Complaint as though fully set forth herein.

6        45.    Plaintiffs and the Section 203 Sub-Class of employees whose employment with DRI

7  has been terminated at any time since July 15, 2004 were, at all times, during their employment with

8  DRI, entitled to wages for all hours worked but unpaid, including, but not limited to, all missed

9  meal and rest breaks.

10       46.    More than 30 days have passed since Plaintiffs and the other members of the Section

11  203 Sub-Class quit or were discharged from their positions with DRI.

12       47.    As a consequence of DRI's willful failure to pay the Section 203 Sub-Class members

13  for all hours worked but unpaid, including, but not limited to all missed meal and rest breaks, the

14  Section 203 Sub-Class members are entitled to thirty days wages as penalty damages in excess of

15  Five Million Dollars ($5,000,000.00) pursuant to Labor Code, Section 203.

16

## FOURTH CAUSE OF ACTION

17

## (Unfair Business Practices, Business & Professions Code, §§17000, et seq.)

18       48.    Plaintiffs reallege and incorporate herein by reference each and every allegation

19  contained in Paragraphs 1 through 29, 31 through 36, 38 through 43, and 45 through 47, inclusive,

20  of this Complaint as though fully set forth herein.

21       49.    The Unfair Trade Practices Act defines unfair competition to include any "unfair,"

22  "unlawful," or "deceptive" business practice.  The Unfair Trade Practices Act provides for

23  injunctive and restitutionary relief for violations. The failure to compensate the Class Members for

24  all time worked, including, but not limited to, compensation for missed meal and rest breaks, is an

25  unfair business practice as defined by the Unfair Practices Act.

26       50.    Defendants, and each of them, are "persons" as defined under Business &

27  Professions Code §17021.

28       51.    Each of the directors, officers, and/or agents of DRI are equally responsible for the

13

Exhibit ____A____, Page___35___

1 acts of the other directors, officers, employees and/or agents as set forth in Business & Professions
2 Code §17095.

3     52.   DRI, through its RL restaurants, creates, prepares, sells and serves seafood based
4 meals throughout California.   This provides service to the public as defined in Business &
5 Professions Code §§17022 and 17024.

6     53.   Plaintiffs are informed and believe, and based thereon allege, that DRI has
7 intentionally and improperly required the Class Members to perform tasks, including, but not
8 limited to working without proper meal and rest breaks for the period of July 2004 to the present.

9     54.   Plaintiffs are informed and believe, and based thereon allege, that DRI has under-
10 reported to federal and state authorities wages earned by the Class Members and, therefore, has
11 underpaid state and federal taxes, employer matching funds, unemployment premiums, Social
12 Security, Medicare, and Workers' Compensation premiums. The aforesaid conduct is criminal in
13 nature and subjects DRI to sanctions, fines and imprisonment, and is actionable under Business &
14 Professions Code §§17000 et seq., and 17200 et seq.

15     55.   Plaintiffs are informed and believe, and based thereon allege, that by failing to
16 provide compensation for all hours worked and proper rest and meal breaks for Class Members for
17 the time period of July 2004 to the present was intentional.

18     56.   Pursuant to Business & Professions Code §§17071 and 17075, the failure of DRI to
19 properly pay unpaid wages, related benefits, and employment taxes, is admissible as evidence of
20 DRI'S intent to violate Chapter 4 of the Unfair Business Trade Act.

21     57.   Plaintiffs are informed and believe, and based thereon allege, that DRI has instructed
22 and directed its directors, officers, employees, and/or agents to intentionally and unlawfully avoid
23 payment of wages due for all hours worked, in order to take advantage over DRI'S competitors in
24 violation of Business & Professions Code §17043, including and without limitation:

25     a.   Class Members were required to work not just eight (8) hours in one work
26        day or forty (40) hours in one work week, but were required to work as long
27        as necessary to complete their jobs without breaks;
28     b.   Class Members were required to perform work and attend training,

14

COMPLAINT - CLASS ACTION

Exhibit ___A___, Page _36_

management and other meetings throughout the country while not receiving compensation for their actions; and

c.     Plaintiffs are informed and believe, and based thereon alleges, that DRI was able to compete unfairly with other chain type restaurants in the State of California by not properly providing its employees wages for all hours worked and meal and rest breaks in violation of Business & Professions Code, Chapter 4 and 5, *et seq.*

58.     The victims of this unfair business practice include, but are not limited to, the Class Members, competing businesses in the State of California, and the general public.

59.     Plaintiffs are informed and believe, and based thereon allege, that DRI performed the above-mentioned acts with the intent of gaining an unfair competitive advantage, thereby injuring Plaintiffs, employees, other competitors, and the general public.

60.     Plaintiffs are informed and believe, and based thereon allege, that DRI by committing the above-described acts, has deceived the public by illegally depriving its employees of wages, thus injuring its employees who are members of the community.

61.     The failure to properly pay wages is a crime punishable by both a statutory fine and imprisonment for each violation pursuant to Business & Professions Code §17100, and other statutes. The acts constitute a continuing and ongoing unlawful activity prohibited by Business & Professions Code §§17000, *et seq.*, and 17200, *et seq.*, and justify the issuance of an injunction. All remedies are cumulative pursuant to Business & Professions Code §17205.

62.     Pursuant to Business & Professions Code §17082, Plaintiffs, on behalf of themselves and all other Class Members, request three (3) times the amount of the Class Members' damages resulting from each of DRI'S violations of Chapter 4 of the Unfair Trade Practices Act.

63.     Pursuant to Business & Professions Code §§17200 and 17203, Plaintiffs and members of the general public are entitled to restitution of all funds wrongfully not paid by DRI to the Class Members, together with interest, penalties, attorney fees and costs. Plaintiffs are also entitled to an injunction prohibiting DRI from requiring its employees to work without proper compensation and rest and meal breaks.

15

COMPLAINT - CLASS ACTION

Exhibit _____A_____, Page___37___

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and Class and Sub-Class Members pray for judgment as follows:

1.   For unpaid minimum wage compensation in an amount in excess of five million dollars ($5,000,000.00), together with interest thereon;

2.   For liquidated damages pursuant to Labor Code Section 1194.2;

3.   For unpaid meal and rest break premiums in an amount in excess of seven million dollars ($7,000,000.00), together with interest thereon;

4.   For waiting-time penalties under *Labor Code § 203* for all Class Members during the applicable limitations period in excess of five million dollars ($5,000,000.00), together with interest thereon;

5.   For treble damages pursuant to the Unfair Practices Act;

6.   For attorney fees, expenses and costs pursuant to Labor Code, Section 1194;

7.   For an injunction prohibiting DRI from requiring its California employees to spend time performing tasks for which they are not paid;

8.   For such other and further relief as the Court deems just and proper; and

9.   For a jury trial.

THE LAW OFFICE OF GARRY M. TETALMAN

DATED: July 18, 2008          By: _____
                                  Garry M. Tetalman, Esq.
                                  Attorneys for Plaintiffs

THE LAW OFFICE OF LAUREN JOHN UDDEN

DATED: July 18, 2008          By: _____
                                  Lauren John Udden, Esq.
                                  Attorneys for Plaintiffs

16

**COMPLAINT - CLASS ACTION**

Exhibit ___A___, Page___38___

1
## PROOF OF SERVICE BY UNITED STATES MAIL

2
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3
     I am employed in the County of Los Angeles, State of California; I am over

4
the age of 18 years and not a party to this action.  My business address is 633 West Fifth Street, 53rd Floor, Los Angeles, California 90071.

5
     On October 22, 2008, I served the following document(s) described as:

6

7
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)

8

9

10
on the persons below as follows:

11
Garry M. Tetalman                          Lauren J. Udden
The Law Office of Garry M. Tetalman    The Law Office of Lauren J. Udden

12
15 W. Camarillo Street, Suite 209       15 W. Camarillo Street, Suite 209
Santa Barbara, California 93101         Santa Barbara, California 93101

13

14
     I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

15
☒     placed the envelope or package for collection and mailing, following our

16
ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day

17
that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed

18
envelope or package with postage fully prepaid.

19
     I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

20

21
☒   (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare

22
under penalty of perjury under the laws of the United States of America that the above is true and correct.

23

24
Executed on October 22, 2008, at Los Angeles, California.

25
Miltonette Steinberg                /s/ Miltonette Steinberg

26

27

28

CASE NO. CV08-06840 CAS (AGRx)